The opinion of the Court was delivered by
Dunicin, 0. J.
Although the amount involved in this litigation is large, and the parties interested very numerous, the questions to be adjudicated relate rather to the general principles and practice of this Court, in the institution and carriage of causes.
The general and familiar rule, in Courts of equity, is that all persons materially interested in the subject matter, ought to he made parties to the suit, either as plaintiffs or defendants, however numerous they may be, in order, not only that complete justice may be -done, but that multiplicity of suits may be prevented. And so solicitous is the Court, not to proceed to judgment in the absence of a party interested, that it will sometimes suspend further proceedings of its own motion, until an opportunity is afforded of having such interests represented. But this general rule, as remarked by Mr. Justice Story, however useful and valuable as a practical guide, is still open to exceptions, and qualifications, and limitations, the nature, and extent, and application of which are not, and cannot, independently of judicial decision, be always clearly defined.
One of the recognized exceptions is where the parties are exceedingly numerous, and it would be impracticable to join them without almost interminable delays, and other incumbrances which would obstruct, and probably defeat the purposes of justice, (1 Story Eq. § 94.) In this class may be included a creditor’s bill. In such proceedings, according to the practice of this State, public notice is given to all creditors who may desire to make themselves parties in the cause. Upon the same principle, where there *65 are numerous shareholders of a voluntary association, some are permitted to file a bill on behalf of themselves and others, having, a common interest. If the object (says the Commentator) were to enforce some interest common to all the shareholders, such bill would be sustained. But if the object be to dissolve the company, or subvert its articles, he doubts if, upon the authorities, the bill would be allowed, without making the other shareholders, however numerous, actual parties to the suit. lie seems to think, however, that the purposes of justice, even in such cases, would be best subserved “by allowing all persons to become parties, either by a bill on behalf of all, or by coming in and resisting the objects of the bill, under the interlocutory proceedings.” Why, he adds, “the same proceedings might not have been permitted, even to the extent of binding unrepresented interests, after due notice to the parties to appear and represent them, as is done in the ordinary cases of creditors against the estates of persons deceased, it is not very easy to state in a satisfactory manner.” Upon the rules themselves, there exists discrepancy in the authorities; but the principal difficulty is in the application to the circumstances of each particular ca,se.
This bill was filed 29th March, 1867, by the plaintiffs, “ on behalf of themselves and all others who are creditors of, and entitled to share in the assets of the Charleston Savings Institution,” against the said corporation.
They charge, among other things, that the defendants had suspended business, and had failed, and that the assets are insufficient to satisfy the just claims of the depositors and creditors of the Institution. The prayer of the bill is, among others, that the defendants may account for their transactions; that an account may be taken under the direction of the Court, of the debts due to the plaintiffs and others, and that the creditors, other than the plaintiffs, may be summoned and notified by the order of the Court to *66 come forward, according to the course and practice of the Court, to establish the claims due by the said Institution to them, and that an account may be taken of the assets, and the same be administered by the Court, that a receiver may be appointed, and the officers of the Institution be restrained from collecting or parting with the assets, &c.
The answer of the corporation by their officers and trustees was filed 25th May, 1867, in which they admit that the Institution was last incorporated in 1856, for fourteen years; that at the close of the late war, being satisfied that they could not pay their depositors in full, the trustees resolved to receive no more deposits, but to apply themselves to the collection of such assets as they found available ; that, for the reasons stated in their answer, it would be disastrous at present to throw the securities on the market, or make a general foreclosure of their mortgages; that it is the opinion of the trustees, and is confidently believed by a very large majority in interest and in numbers of the persons interested, that the affairs of the Institution can be more economically and successfully managed by the trustees than in any other way; and they submit to the Court, whether there is any equity set forth in the bill, upon which the management of the Institution can be taken out of the hands of the trustees.
On 25th of July, 1867, one of the Masters granted an injunction, as prayed by the bill, and also an order to account; but it does not appear that an order was at any time made or published for the depositors and other creditors of the Institution to come forward and establish their claims against the Institution according to the course and practice of this Court, and as prayed by the bill.
Under the order to account, a statement was rendered by the trustees, by which, as the Master reports, the assets, not worthless, amounted to $1,171,183.11, of some blit uncertain value, and the amount due depositors (who were the *67 only creditors) was $2,871,041.51. This report bears date 5th August, 1867, and on 8th August an order was passed by the Chancellor that the defendants should transfer to the Master the assets and securities of the Institution, and convey to the trustees, to be named by the Master, the real estate, and that thereupon the trustees and officers should be discharged from'further liability; directed the Master' to collect the securities, and report a scheme for the settlement of the affairs of the Institution, having first published a notice for twenty- days of a reference to be held for that purpose. On 28th October, the Master reported 'his compliance with the order, and presented a scheme for ■the settlement of the affairs of the Institution. “Soon after the filing of the report, (says the Chancellor in his decree) a motion was made before me to file a petition in the cause by a large number of the depositors, whose deposits, in the aggregate, amount to $550,000.” The purpose and object of the petitioners is then stated; and, for the reasons set forth in the decree, the motion to file the petition was refused.
It is not proposed to consider the several grounds of appeal, or to discuss the general principles in such cases. It is manifest.that, although the plaintiffs and petitioners had a common interest in the assets of the Charleston Savings Institution, they differ materially as to the mode in which that interest would be promoted or subserved. . When the plaintiffs instituted their proceedings, they may well have anticipated no such diversity of opinion on the part of the other shareholders. Only the corporation were therefore made defendants. But in order to prevent surprise or injustice, and in conformity with the approved practice of the Court, the bill prayed that notice might be published for all shareholders and creditors to appear and establish their demands. The Court does all that is in its power in such cases, and although in some instances, as in Hust vs. Hust, *68 (6 Rich. Eq. 114,) injustice is sometimes done, notwithstanding every precaution ; the administration of the law cannot be impeded because of possible individual hardship. But no such notice was ever published; and on 8th of August, 1867, the order was made which transferred the assets to the Master, and discharged the trustees. That order substantially adjudicated a material point of difference by transferring the administration of the Institution, three years prior to the expiration of the charter, from the trustees to the officers of the Court. The question is not as to, the expediency or propriety of the adjudication, but whether the petitioners were not entitled to a hearing prior to such judgment. When the bill seeks to dissolve a company, or subvert its articles, Mr. Justice Story suggests as a means of obviating the necessity of making every shareholder a party in. the bill, that, they should be called on by notice and under interlocutory proceedings, and have the opportunity to come in and resist the objects of the bill. (§ 136.) The petitioners are entitled to the judgment of the tribunal in the last resort upon the matters determined by the decretal order of 8 th August, but they cannot appeal from a decision in which they were not parties, and presented no issue.
When the scheme prepared under order 8th August, was presented to the Court, or soon afterwards, the petition was preferred asking that the petitioners might be made parties defendant in the manner therein set forth. In the opinion of this Court, the petitioners were not concluded by the previous proceedings and leave should have been granted to file the petition, and ail order according to the prayer thereof, should have been passed by the Court. It is now- so ordered and adjudged.
Wardlaw and Inglis, A. JJ., concurred.

Motion granted.